YARRUT, Judge.
Plaintiff seeks to expropriate 17.137 acres of a 92.6 acre (unimproved) tract in Jefferson Parish, owned by Defendant, needed for the construction of Interstate Highway 10. The Trial Judge rendered judgment for Defendant for the following items: (1) Market value of expropriated property — $245,059.10; (2) Loss of asphalt surfacing — $7,200.00; and (3) Value of realty for service road — $31,710.00, or a total of $283,969.10; subject to a credit of $275,900.00 deposited in the Registry of Court, with interest on the balance of the award from judicial demand, plus all costs.
On appeal, Defendant’s only complaint is over the award for the market value of the expropriated property.
The Trial Judge determined that the highest and best use of the property was for single family residential development. Defendant contends that the highest and best use is for commercial and multiple residential.
It was stipulated that the value of the property for single family residential purposes was $14,300.00 per acre; for commercial 60 cents per square foot; and for multiple residential 50 cents per square foot.
In 1958 when Defendant acquired the property it was zoned R-l (single family residential). On May 20, 1960 the Parish of Jefferson reclassified 41.6 acres of Defendant’s property as C-2 (commercial), and 31.5 acres as R-3 (multiple residential), with 2.4 acres remaining R-l. At that time it. was known that a portion of the tract would be used for Interstate Highway 10. The property to be taken for the highway was contiguous with the reclassified land, but was not itself reclassified and remained R-l, being designated as reserved for Interstate Highway 10. Because the land taken is part of the larger tract, if the highest and best use of that larger tract is commercial and multiple residential, then the highest and best use of the land taken should also be commercial and multiple residential, and Defendant should recover an additional $181,406.-70.
There was a conflict in the testimony of Plaintiff’s and Defendant’s real estate experts regarding the highest and best use of the property. Testifying for Defendant were Omer F. Kuebel and J. Wallace Pale-tou, both of whom were of the opinion that the property’s close proximity to populated areas and its size made it suitable for commercial and multiple residential use.
Plaintiff’s experts were Eugene A. Aschaffenburg and Max J. Derbes, Jr.
It is Defendant’s contention that Mr. Aschaffenburg’s testimony supports his position that the ^property should be classified as commercial and multiple residential. Admittedly, Mr. Aschaffenburg did testify that there was a possibility that a portion of the land involved could be used for a small commercial development. Further, in answer to the question whether the property could have been used for multiple residential purposes, he replied “yes.” However, an examination of Mr. Aschaf-fenburg’s entire testimony revealed that he was of the opinion that the highest and best use of the property was for single family residential development, and that the alternatives were only possibilities. For example, the following was his opinion of the area at the time of the taking:
“A. So, the access to the property for a large commercial development, in my opinion, is not good. Also, in competition to any commercial de *800 velopment there was the tremendous area available on the Veterans Memorial Highway, all the way from Green Acres to David Drive, most of that area was completely unimproved and most of it was on the market for sale at the time that I made, or just shortly prior to the time that I made my appraisal. Now, it is my opinion that any commercial development that would take place that would serve the area that a commercial development of the subject property would serve would prefer to be located on the Veterans Memorial Highway. And, I just think that that’s so obvious that I won’t go any further into it. For that reason, I think there is some possibility that a perimeter of the subject property zoned commercial might have been used for the strip-type of commercial development, such as is in front of Green Acres. There’s some strip development there, with a parking right off the Veterans Highway. That is a possibility. But, to use this tremendous area for a commercial development, I don’t think it would have been wise at that time, prior to the installation of this Interstate Highway and the twin bridges across Canal Number Three. So, in my opinion, the highest and best use of the part taken was R-l Residential, and I appraised it as such.”
Mr. Derbes testified that, without the advantage that the property taken had a frontage on Interstate 10, it would not be suitable for either commercial or multiple residential purposes.
All experts testified that access to the property was limited at the time of the taking. To reach the property from Veterans Highway there was a black-topped street (called Lisa Drive) which was connected with a narrow wooden bridge at Canal No. 3 at the southern boundary of the property involved, and which led to Power Boulevard, then a single lane roadway. The only other access to the property was a bridge across Elmwood Canal, which forms the eastern boundary of the property taken, located at Kawanee Avenue, about 560 feet north of the northeast corner of the subject property.
The Trial Judge concluded that the access was poor and inadequate at the time of the taking, and gave this as one of his principal reasons for concluding that the highest and best use of the property was for single family residential development. In his reasons for judgment, the Trial Judge also relied heavily on the fact that, in reclassifying the property from R-l to C-2 and R-3, the Jefferson Parish Zoning Commission gave, as one of its principal reasons, the fact that the property would have access from Interstate Highway 10.
In determining the highest and best use of the property taken one must value the property in the condition it existed at the time of the taking. LSA-R.S. 48:453. State, Through Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280.
In estimating the value of the property expropriated the basis is the value which the property possessed before the contemplated improvement was proposed. LSA-R.S. 19:9.
The Trial Judge applied both of the above principles to determine the highest and best use of the land. As the question of the highest and best use of property is a factual one the “manifest error” rule applies. State, Through Department of Highways v. Calvert, La.App., 209 So.2d 759.
We find that there is ample evidence to justify the Trial Judge’s conclusion that, without its frontage on Interstate Highway 10, and with its limited access at the time of the taking, the property’s highest and best use was for single family residential development.
*801 Hence the judgment appealed from is affirmed; Defendant to pay all costs of this appeal; all other costs to be taxed to Plaintiff.
Affirmed.